**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SAVAS MERT,<br><br>                              *Plaintiff*,<br><br>           -against-<br><br>MYKONIAN HOUSE LLC d/b/a MYKONIAN HOUSE, GREGORY POLITIS, and ALINA BORYS-SZEWCZYK,<br><br>                              *Defendants*. | **COMPLAINT**<br><br>**CLASS AND COLLECTIVE<br>ACTION UNDER<br>29 U.S.C. § 216(b)**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Savas Mert ("Plaintiff" or "Mr. Mert"), individually and on behalf of others similarly situated (collectively, "Plaintiffs"), by and through his attorneys, Pryor Cashman LLP, as and for his Complaint against defendants Mykonian House LLC d/b/a Mykonian House ("Mykonian" or the "Restaurant"), Gregory Politis ("Mr. Politis"), Alina Borys-Szewczyk ("Ms. Borys-Szewczyk," and collectively with Mykonian and Mr. Politis, "Defendants"), alleges as follows:

## NATURE OF ACTION

1.      This action concerns a hostile and unlawful work environment created by an unscrupulous employer improperly hijacking tips that rightfully and legally belong to its employees; refusing to provide its employees with the bare minimum accommodations required by law, such as breaks during lengthy shifts, overtime compensation, and necessary employment documents; and, perhaps most concerningly, the employer's blatant and hostile harassment and physical abuse of its employees.

1

2.      Mr. Mert, a former employee of Mykonian, brings this action following the unlawful and retaliatory termination of his employment by Defendants after he reported the many wrongs they committed and demanded better treatment.

3.      Defendants own, operate, and/or control a Greek restaurant located at 25 East 83rd Street, New York, NY 10028, operating under the name "Mykonian House."

4.      Upon information and belief, individual Defendant Mr. Politis serves or served as an owner, manager, principal, and/or agent of Mykonian, and through this corporate entity, operates or operated the Restaurant as a joint or unified enterprise.

5.      Upon information and belief, individual Defendant Ms. Borys-Szewczyk serves or served as Mr. Politis's partner in the ownership and/or operation of the Restaurant.

6.      Mr. Mert began his employment as a server at the Restaurant in approximately September 2023 and was unlawfully terminated in February 2025.  He was employed by Defendants for approximately 17 months.

7.      From the outset of Mr. Mert's employment, Defendants demonstrated a lack of regard for legal requirements governing the operation of a restaurant.  Defendants ignored their legal obligation to  provide Mr. Mert with a written notice, in English and in Turkish (Mr. Mert's primary language), containing information regarding Mr. Mert's rate and frequency of pay, including overtime pay; any wage supplements claimed by Defendants as part of Mr. Mert's prevailing wage; and the employer's name, "doing business as" name(s), physical and mailing address, and telephone number.

8.      Then, Defendants unlawfully required Mr. Mert to purchase "tools of the trade" with his own funds – including specific attire to wear during his shifts at the Restaurant – and did

not reimburse or otherwise compensate Mr. Mert for the expense he incurred in obtaining these items.

9.      Defendants' treatment of Mr. Mert worsened over time.  On several occasions, they required him to work shifts in excess of eight hours without legally sufficient breaks or meal periods.

10.     Further, at all times relevant to this Complaint, Defendants failed to pay Mr. Mert adequate overtime compensation for the hours he worked in excess of forty (40) in each workweek.

11.     Defendants also pocketed for themselves compensation that was duly owed to their employees, including Mr. Mert.

12.     At all times relevant to this Complaint, Defendants maintained a policy and practice of manipulating the tip pool, including by extracting and withholding up to 30 percent of the value of the tips received into the pool on any given night, thereby artificially and unlawfully deflating the compensation paid to Mr. Mert.

13.     Defendants also unlawfully and inappropriately deflated the tip pool by covering operational expenses with tips, such as compensation to the Restaurant's hostess and trainees.

14.     Likewise, Mr. Politis would "play favorites" by including personal acquaintances as waiters on the company payroll and permitting them to slack off and decline to contribute to the operation of the restaurant while sharing equally in the tips earned by other employees.

15.     At all times relevant to this Complaint, Defendants maintained and continue to maintain a policy and practice of refusing to provide Mr. Mert a report of the tip pool.

16.     Mr. Politis regularly and repeatedly subjected Mr. Mert and his colleagues to blatant and hostile harassment and physical abuse during their shifts, including by kicking Mr. Mert and his colleagues in their legs with great force.

17.    Finally, when Mr. Mert approached Defendants about these unlawful and toxic working conditions and practices and demanded better treatment, Defendants unceremoniously terminated Mr. Mert's employment, unquestionably retaliating against him for asserting his rights.

18.    Mr. Mert's physical and mental health have suffered significantly as a consequence of the emotional distress he experienced resulting from the hostile treatment to which he was subjected.

19.    As a result, Mr. Mert now brings this action, on behalf of himself and other similarly situated individuals, pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), for violations of New York Labor Law ("N.Y. Lab. Law") §§ 142-2.2, 162, 195, 198, and 198-b, and for violations of New York common law, to secure the unpaid wages which he is duly owed, along with interest and attorneys' fees and costs, and additional relief to be determined at trial stemming from Defendants' workplace deficiencies and harassment, including monetary and statutory damages, liquidated damages, interest, punitive damages, attorneys' fees, and costs.

20.    Mr. Mert seeks certification of this action as a class and collective action on behalf of himself, individually, and all other similarly situated employees and former employees of Defendants, pursuant to 29 U.S.C. § 216(b).

## PARTIES

*Plaintiff*

21.    Plaintiff Savas Mert is a natural person who resides in Queens County, New York. From approximately September 2023 through approximately February 2025, Mr. Mert was employed by Defendants.

4

*Defendants*

22.     At all times relevant to this Complaint, Defendants owned, operated, and/or controlled a Greek restaurant, located at 25 East 83rd Street, New York, NY 10028, operating under the name "Mykonian House."

23.     Upon information and belief, Defendant 1226 Mykonian House LLC d/b/a Mykonian House is a domestic corporation organized and existing under the laws of the State of New York.  Upon information and belief, it maintains its principal place of business at 25 East 83rd Street, New York, NY 10028.

24.     Upon information and belief, Defendant Gregory Politis is a natural person who has been engaged in business in this judicial district at all times relevant to this Complaint. Mr. Politis is sued in his individual capacity as an owner, manager, principal, and/or agent of Mykonian House LLC, through which he operates the Restaurant as a joint or unified enterprise. Upon information and belief, Mr. Politis determines the wages and compensation of the employees of the Restaurant, including Mr. Mert, establishes the schedules of the employees, maintains wage and employee records, sets the policy and practice for the Restaurant, manages the day-to-day operations of the Restaurant, and has the authority to hire and terminate employees.  Upon information and belief, Mr. Politis is one of the ten largest shareholders of Mykonian, rendering him jointly and severally liable for all debts, wages, and salaries due to Mykonian's employees pursuant to N.Y. Bus. Corp. Law § 630.

25.     Upon information and belief, Defendant Alina Borys-Szewczyk is a natural person who has been engaged in business in this judicial district at all times relevant to this Complaint. Ms. Borys-Szewczyk is sued in her individual capacity as an owner, manager, principal, and/or agent of the Restaurant.  Upon information and belief, Ms. Borys-Szewczyk determines the wages

and compensation of the employees of the Restaurant, including Mr. Mert, establishes the schedules of the employees, maintains wage and employee records, sets the policy and practice for the Restaurant, manages the day-to-day operations of the Restaurant, and has the authority to hire and terminate employees. Upon information and belief, Ms. Borys-Szewczyk is one of the ten largest shareholders of Mykonian, rendering her jointly and severally liable for all debts, wages, and salaries due to Mykonian's employees pursuant to N.Y. Bus. Corp. Law § 630.

## JURISDICTION AND VENUE

26. This Court has subject matter jurisdiction over this matter under the doctrine of federal question jurisdiction pursuant to 28 U.S.C. § 1331, as Mr. Mert brings claims predicated on the FLSA, 29 U.S.C. § 201 *et seq*. Mr. Mert's claims arising under the laws of the State of New York are substantially related to his federal claims such that they form part of the same case or controversy under Article III of the United States Constitution, and are thus subject to this Court's supplemental jurisdiction under 28 U.S.C. § 1367(a).

27. This Court has personal jurisdiction over Defendants because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in the State of New York. Furthermore, Mykonian is incorporated in the State of New York, and upon information and belief, Mr. Politis and Ms. Borys-Szewczyk reside in the State of New York. Mr. Mert's claims arise out of the business Defendants transact in the State of New York on a daily basis.

28. Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants operate a restaurant located in this district, and Mr. Mert was employed by Defendants in this district.

## FACTUAL ALLEGATIONS

### *Facts Relevant to All Claims*

29.     Starting approximately in September 2023, Mr. Mert was employed as a server by Mykonian, a Greek restaurant.  As a server at Mykonian, Mr. Mert performed responsibilities typical of a restaurant employee, such as taking orders, providing the kitchen with meal order slips, and cleaning and preparing tables and chairs for diners.

30.     At all times relevant to this Complaint, Defendants were Mr. Mert's employers within the meaning of the FLSA and New York Labor Law.  Defendants had the power to hire and terminate Mr. Mert, control the terms and conditions of his employment, and determine the rate and method of any compensation in exchange for his services.

31.     Upon information and belief, at all times relevant to this Complaint, Defendants and/or their enterprise were directly engaged in interstate commerce.  As an example, numerous items used at the Restaurant on a daily basis to perform their responsibilities were goods produced outside of the State of New York, and diners frequently visited the Restaurant from outside the State of New York.

32.     Upon information and belief, at all times relevant to this Complaint, Defendants' gross annual sales exceeded $500,000.

33.     Plaintiff seeks to represent a class of similarly situated individuals under 29 U.S.C. § 216(b).

### *Facts Relevant to Wage and Hour Claims – Causes of Action 1 through 10*

34.     From the outset of Mr. Mert's employment, Defendants manifested a willingness to disregard legal requirements governing the operation of any restaurant.

35.    Defendants did not provide Mr. Mert with a written notice, in English and in Turkish (Mr. Mert's primary language), containing information regarding Mr. Mert's rate and frequency of pay, including overtime pay; any wage supplements claimed by Defendants as part of Plaintiff's prevailing wage; and the employer's name, "doing business as" name(s), physical and mailing address, and telephone number, in violation of N.Y. Lab. Law § 195(1).

36.    Defendants required Mr. Mert to purchase "tools of the trade" with his own funds – including specific attire to wear during his shifts at the Restaurant – and did not reimburse or otherwise compensate Mr. Mert for the expense he incurred in obtaining these items, in violation of the FLSA, 29 U.S.C. § 206(a), 29 C.F.R. § 531.35, and N.Y. Lab. Law §§ 193 and 198-b.  As an example, Defendants required Mr. Mert to wear a specific monochromatically black outfit – Mr. Mert had to purchase enough articles of clothing of acceptability to Defendants to wear during his near-daily shifts, without any reimbursement from Defendants.

37.    At all times relevant to this Complaint, Defendants required Mr. Mert to work shifts in excess of eight hours without legally sufficient breaks or meal periods, in violation of N.Y. Lab. Law § 162(4).

38.    At all times relevant to this Complaint, Defendants required Mr. Mert to work shifts constituting a total spread of hours greater than ten without providing additional compensation, in violation of N.Y. Comp. Codes R. & Regs., Title 12, § 146-1.6.

39.    At all times relevant to this Complaint, Defendants did not compensate Mr. Mert at an overtime rate for the hours Mr. Mert worked in excess of forty (40) in a workweek, in violation of the FLSA, 29 U.S.C. § 207 and N.Y. Comp. Codes R. & Regs., Title 12 § 142-2.2.

40.    At all times relevant to the Complaint, Mr. Mert was primarily engaged in the serving of food and beverages to guests, patrons and customers in the Restaurant, and regularly

received tips from such guests. Mr. Mert was therefore a "food service worker" and qualified as a "tipped employee" within the meaning of N.Y. Lab. Law.

41.     Mr. Mert customarily received more than $30 per month in tips, and was therefore a "tipped employee" within the meaning of the FLSA at all times relevant to this Complaint.

42.     Defendants pocketed for themselves a significant portion of the compensation that was duly owed to their employees, including Mr. Mert.

43.     At the Restaurant, servers received tips primarily by indication on receipts after customers paid for meals by credit card. Pursuant to instruction from management, servers inputted such tips into a computer system as they were received. At the conclusion of a shift, management would purport to calculate the total value of the tip pool by adding together the value of the tips inputted into the Restaurant's computer system throughout the shift and dividing the total value of the tip pool among the servers, busboys, and bartenders that worked throughout the shift.

44.     However, Mr. Mert and his fellow employees noticed that the total value of tips that were being divided and distributed through the tip pool regularly came out to less than the total combined value of the tips that servers inputted into the Restaurant's computer system throughout the shift.

45.     The total combined value of the tips that servers inputted into the computer system during a shift was typically around $1,600 during weekend evening shifts and $1,000 during weeknight shifts. However, the employees realized that they were receiving a notably reduced sum in their distributions at the end of their shifts.

46.     By keeping note of the total value of the tips they were inputting and then discussing the values they received, Mr. Mert and his colleagues deduced that the Restaurant was regularly

artificially deflating the value of the tip pool by between 7 percent and 30 percent, distributing significantly less to the servers, busboys, and bartenders than they were owed.

47.     Tellingly, the Restaurant refused to provide its employees with a report of the tip pool at the conclusion of each shift, instead demanding that employees simply take management at its word as to the total value of the tip pool.

48.     After recognizing the disparity between the value of the tips being inputted into the system and the value of the tips being paid out to employees, Mr. Mert and his colleagues raised concerns about the deflation of the tip pool to the Restaurant's management, including Mr. Politis. Mr. Politis tacitly acknowledged the issue by responding that he did not know why there was a discrepancy.  Notwithstanding this acknowledgment, management did not take any measures to address the deflated tip pool, and continued to withhold pay and compensate its employees at an artificially reduced rate.

49.     Perhaps feeling emboldened by overcoming the employees' confrontation, Defendants began reducing the value of the tip pool even further, by covering certain of the Restaurant's operational expenses from the tip pool.

50.     For example, Mr. Mert observed that Defendants used money from the tip pool to pay employees who the Restaurant was legally obligated to compensate out-of-pocket, such as trainees and even the Restaurant's hostess.  These practices further deflated the value of the compensation paid to Mr. Mert and his colleagues.

51.     Likewise, Mr. Politis would "play favorites" by including personal acquaintances – often younger women – as waiters on the company payroll and permitting them to slack off and decline to contribute to the operation of the restaurant while sharing equally in the tips earned by other employees.  Indeed, on several occasions, such "employees" would show up well after the

10

beginning of a shift, sit in the corner of the Restaurant on their phones while chatting with Mr. Politis, and then at the end of the shift, would collect the same proportion of the tip pool distributions as the waiters, bartenders, and busboys who had been working diligently for hours.

52.    Mr. Mert again raised concerns about these practices to Restaurant management, including Mr. Politis.  Mr. Politis made up nonsensical excuses to "justify" each of the instances Mr. Mert questioned and ultimately told him to "mind your own business."

*Facts Relevant to Physical Abuse and Harassment Claims – Causes of Action 12 through 13*

53.    Mr. Politis regularly and repeatedly subjected Mr. Mert and his colleagues to blatant and hostile harassment and physical abuse during shifts at the Restaurant.

54.    For example, in or about February 2024, Mr. Politis instructed Mr. Mert to serve a table of Mr. Politis' personal friends.  However, Mr. Politis had not explained to Mr. Mert that the Restaurant would be covering the cost of his friends' meals, and did not advise Mr. Mert in advance that he should not offer Mr. Politis' friends the daily "specials," because Mr. Politis thought they were too expensive for the Restaurant to cover.

55.    When Mr. Mert was in the process of taking the diners' order, Mr. Politis walked by the table to listen.  As Mr. Mert began to list the Restaurant's daily specials – again, without any notion that Mr. Politis did not want him to do so – Mr. Politis kicked Mr. Mert's leg with force under the table.

56.    Mr. Politis later told Mr. Mert that he had kicked him because the Restaurant was covering the cost of Mr. Politis' friends' meals and Mr. Mert should not have offered the table the daily specials and, instead, should have discouraged the diners from ordering expensive meals.

57.     When Mr. Mert discussed the painful encounter with his colleagues, he learned that Mr. Politis had also kicked several other employees at the Restaurant for other perceived "mishaps." Mr. Mert and his fellow employees grew to fear Mr. Politis' outbursts.

58.     Mr. Politis' aggression toward Mr. Mert and his colleagues created a hostile work environment in which employees feared subjection to arbitrary physical abuse and sent a clear and threatening message: if Mr. Politis is displeased with an employee's work, he will cause them physical harm.

59.     Mr. Mert's physical and mental health have suffered as a consequence of the emotional distress he experienced resulting from the hostile and physically abusive treatment to which he was subjected at the Restaurant.

*Facts Relevant to Retaliatory Termination Claim – Causes of Action 14 through 15*

60.     After nearly a year and a half of enduring toxic and unlawful working conditions, Mr. Mert decided he needed to more firmly address his concerns. In February 2025, he confronted Mr. Politis, asserting that it was unacceptable that Defendants had been manipulating the tip pool, pocketing compensation owed to Mr. Mert and his colleagues, and treating Mr. Mert and his colleagues in a disrespectful and unlawful manner. Mr. Mert's complaints directly addressed Defendants' violations of federal and state labor laws.

61.     The following week, Mr. Politis significantly reduced Mr. Mert's hours at the Restaurant. Then, unceremoniously, Mr. Politis terminated Mr. Mert's employment.

**FLSA COLLECTIVE ACTION CLAIMS**

62.     Mr. Mert brings his FLSA claims as a class and collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of

the Complaint in this case (the "FLSA Class Period"), as employees of Defendants (the "FLSA Class").

63.     At all relevant times, Mr. Mert and other members of the FLSA Class who are and/or have been similarly situated, have had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols, plans, deficiencies, and violations of law.

## FIRST CAUSE OF ACTION

**Violation of the Notice and Recordkeeping Requirements of New York Labor Law
(Against All Defendants)**

64.     Mr. Mert repeats and reasserts each of the allegations set forth in the paragraphs above as though fully set forth herein.

65.     Defendants failed to provide Mr. Mert with a written notice, in English and in Turkish (Mr. Mert's primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; prevailing wage supplements, if any, claimed as part of any prevailing wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; and the regular hourly rate and overtime rate of pay, as required by N.Y. Lab. Law § 195(1).

66.     Defendants are liable to Mr. Mert in the amount of $5,000, together with costs and attorneys' fees, under N.Y. Lab. Law § 198.

## SECOND CAUSE OF ACTION

**Recovery of Costs for Acquisition of Tools of the Trade Under the FLSA**
**(Against All Defendants)**

67.     Mr. Mert repeats and reasserts each of the allegations set forth in the paragraphs above as though fully set forth herein.

68.     Defendants required Mr. Mert to acquire, without reimbursement, the costs and expenses for purchasing and maintaining specific attire and "tools of the trade" required to perform his job, reducing his wages in violation of the FLSA, 29 U.S.C. § 206(a) and 29 C.F.R. § 531.35.

69.     Defendants are liable to Mr. Mert in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

**Recovery of Costs for Acquisition of Tools of the Trade Under New York Labor Law**
**(Against All Defendants)**

70.     Mr. Mert repeats and reasserts each of the allegations set forth in the paragraphs above as though fully set forth herein.

71.     Defendants required Mr. Mert to acquire, without reimbursement, the costs and expenses for purchasing and maintaining specific attire and "tools of the trade" required to perform his job, reducing his wages in violation of N.Y. Lab. Law §§ 193 and 198-b.

72.     Defendants are liable to Mr. Mert in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

**Failure to Allow Sufficient Time for Meals in Violation of New York Labor Law**
**(Against All Defendants)**

73.     Mr. Mert repeats and reasserts each of the allegations set forth in the paragraphs above as though fully set forth herein.

74.    Defendants regularly required Mr. Mert to work shifts in excess of eight hours without providing a full 45-minute meal period midway between the beginning and end of Mr. Mert's shift, in violation of N.Y. Lab. Law § 162(4).

75.    Even when Mr. Mert was scheduled to have breaks of appropriate duration, Defendants would interrupt Mr. Mert's breaks and demand he return to work.

76.    Defendants are liable to Mr. Mert in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

### Violation of the Recordkeeping Requirements of the FLSA
### (Against All Defendants)

77.    Mr. Mert repeats and reasserts each of the allegations set forth in the paragraphs above as though fully set forth herein.

78.    Defendants failed to maintain recordkeeping which accurately reflected the hours Mr. Mert worked and the compensation with which Mr. Mert was provided, including by failing to maintain and provide Mr. Mert with a report of the tip pool reflecting the compensation he was paid in tips during the shifts he worked, in violation of the FLSA, 29 C.F.R. § 516, *et seq*.

79.    Defendants are liable to Mr. Mert in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

### Failure to Provide an Accurate Wage Statement in Violation of New York Labor Law
### (Against All Defendants)

80.    Mr. Mert repeats and reasserts each of the allegations set forth in the paragraphs above as though fully set forth herein.

81.    Defendants failed to maintain a wage statement which accurately reflected the hours Mr. Mert worked and the compensation with which Mr. Mert was provided, including by

failing to maintain and provide Mr. Mert with a report of the tip pool reflecting the compensation he was paid in tips during the shifts he worked, in violation of N.Y. Lab. Law § 195.

82.     Defendants are liable to Mr. Mert in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION

**Failure to Pay Overtime Wage in Violation of the FLSA**
**(Against All Defendants)**

83.     Mr. Mert repeats and reasserts each of the allegations set forth in the paragraphs above as if fully set forth herein.

84.     Defendants did not pay Mr. Mert an overtime wage of one and one-half times his regular rate of pay for each hour he worked in excess of forty (40) in a workweek, in violation of the FLSA, 29 U.S.C. § 207.

85.     Defendants are liable to Mr. Mert in an amount to be determined at trail, but in no event less than the value of his unpaid wages, interest, attorneys' fees, and costs.

## EIGHTH CAUSE OF ACTION

**Failure to Pay Overtime Wage in Violation of New York Labor Law**
**(Against All Defendants)**

86.     Mr. Mert repeats and reasserts each of the allegations set forth in the paragraphs above as if fully set forth herein.

87.     Defendants willfully, or otherwise in violation of the N.Y. Lab. Law and associated rules and regulations, did not pay Mr. Mert overtime compensation at rates of one and one-half times Mr. Mert's regular rate of pay for each hour he worked in excess of forty (40) in a workweek, in violation of N.Y. Comp. Codes R. & Regs., Title 12 § 142-2.2 and supporting regulations of the New York State Department of Labor.

88.     Defendants' failure to pay Mr. Mert overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

89.     Defendants are liable to Mr. Mert in an amount to be determined at trial, but in no event less than the value of his unpaid wages, interest, attorneys' fees, and costs.

## NINTH CAUSE OF ACTION

### Compensation for Spreads of Hours Exceeding Ten Under New York Labor Law
### (Against All Defendants)

90.     Mr. Mert repeats and reasserts each of the allegations set forth in the paragraphs above as though fully set forth herein.

91.     Defendants failed to compensate Mr. Mert for an additional hour of his wage when he worked spreads of hours in excess of ten in a given day, in violation of N.Y. Comp. Codes R. & Regs., Title 12, § 146-1.6.

92.     Defendants are liable to Mr. Mert in an amount to be determined at trial.

## TENTH CAUSE OF ACTION

### Reduction of Tip Pool
### (Against All Defendants)

93.     Mr. Mert repeats and reasserts each of the allegations set forth in the paragraphs above as if fully set forth herein.

94.     By artificially deflating the value of the tip pool and reducing the value of the compensation paid to Mr. Mert below his pro rata share of the tips earned during the shifts in which he worked, Defendants unlawfully withheld compensation from Mr. Mert in violation of N.Y. Lab. Law § 193.

95.     Defendants are liable to Mr. Mert in an amount to be determined at trial, but in no event less than the value of his unpaid wages, interest, attorneys' fees, and costs.

## ELEVENTH CAUSE OF ACTION

### Common Law Assault
**(Directly Against Mr. Politis and Vicariously Against Mykonian and Ms. Borys-Szewczyk)**

96.     Mr. Mert repeats and reasserts each of the allegations set forth in the paragraphs above as if fully set forth herein.

97.     Mr. Politis forcibly kicked Mr. Mert and his colleagues in their legs, exhibiting an intent and willingness to inflict personal injury upon the employees of the Restaurant.

98.     Mr. Politis aroused in Mr. Mert and his colleagues a reasonable and persistent apprehension of harmful and offensive bodily contact.  Mr. Politis has created a workplace environment in which Mr. Mert and his colleagues exist under the fear that Mr. Politis will harm them physically for any work performance that Mr. Politis finds dissatisfactory.

99.     Mr. Mert has suffered considerable mental and emotional anguish as a result of Mr. Politis' actions.

100.    Defendants are liable to Mr. Mert in an amount to be determined at trial.

## TWELFTH CAUSE OF ACTION

### Common Law Battery
**(Directly Against Mr. Politis and Vicariously Against Mykonian and Ms. Borys-Szewczyk)**

101.    Mr. Mert repeats and reasserts each of the allegations set forth in the paragraphs above as if fully set forth herein.

102.    Mr. Politis forcibly and offensively kicked Mr. Mert and his colleagues in their legs, clearly intending to make bodily contact based on his apparent displeasure with their work performance.

103.     Mr. Mert has suffered considerable physical pain and mental and emotional anguish as a result of Mr. Politis' forcible kick to Mr. Mert's leg.

104.    Defendants are liable to Mr. Mert in an amount to be determined at trial.

## THIRTEENTH CAUSE OF ACTION

**Intentional Infliction of Emotional Distress
(Directly Against Mr. Politis and Vicariously Against Mykonian and Ms. Borys-Szewczyk)**

105.    Mr. Mert repeats and reasserts each of the allegations set forth in the paragraphs above as if fully set forth herein.

106.    Mr. Politis forcibly kicked Mr. Mert and his colleagues in their legs when he was displeased with their work performance, sending a clear message that he would punish any workplace performance he deemed dissatisfactory with forcible and offensive bodily contact.

107.    Mr. Mert has experienced severe psychological stress as a result of enduring the workplace toxicity and harassment he has been subjected to on a near-daily basis.

108.    Defendants are liable to Mr. Mert in an amount to be determined at trial.

## FOURTEENTH CAUSE OF ACTION

**Retaliatory Termination of Employment in Violation of the FLSA
(Against All Defendants)**

109.    Mr. Mert repeats and reasserts each of the allegations set forth in the paragraphs above as if fully set forth herein.

110.    After Mr. Mert complained to Mr. Politis about the toxic work conditions to which Mr. Mert had been subjected – clearly asserting his rights protected by the FLSA and New York Labor Law – Defendants retaliatorily and punitively terminated Mr. Mert's employment, in violation of the FLSA, 29 U.S.C. § 215(a)(3).

111.    Mr. Mert has been unemployed since Defendants terminated his employment. He has suffered significant financial loss and well as extreme emotional distress as a result of his retaliatory termination.

112.    Defendants are liable to Mr. Mert in an amount to be determined at trial.

## FIFTEENTH CAUSE OF ACTION

**Retaliatory Termination of Employment in Violation of New York Labor Law
(Against All Defendants)**

113.    Mr. Mert repeats and reasserts each of the allegations set forth in the paragraphs above as if fully set forth herein.

114.    After Mr. Mert complained to Mr. Politis about the toxic and unlawful work conditions to which Mr. Mert had been subjected – clearly asserting his rights protected by the FLSA and New York Labor Law – Defendants retaliatorily and punitively terminated Mr. Mert's employment, in violation of N.Y. Lab. Law §§ 215, 740.

115.    Mr. Mert has been unemployed since Defendants terminated his employment.  He has suffered significant financial loss and well as extreme emotional distress as a result of his retaliatory termination.

116.    Defendants are liable to Mr. Mert in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Mert respectfully requests that this Court enter judgment against Defendants by:

(a)    On the first cause of action, a declaration that Defendants are in breach of N.Y. Lab. Law § 195(1) and an order directing Defendants to pay Mr. Mert $5,000 pursuant to N.Y. Lab. Law § 198;

(b)    On the second cause of action, a declaration that Defendants are in breach of 29 U.S.C. § 206(a) and 29 C.F.R. § 531.35 and an order directing Defendants to pay Mr. Mert an amount to be determined at trial;

20

(c)    On the third cause of action, a declaration that Defendants are in breach of N.Y. Lab. Law §§ 193 and 198-b and an order directing Defendants to pay Mr. Mert an amount to be determined at trial;

(d)    On the fourth cause of action, a declaration that Defendants are in breach of N.Y. Lab. Law § 162(4) and an order directing Defendants to pay Mr. Mert an amount to be determined at trial;

(e)    On the fifth cause of action, a declaration that Defendants are in breach of 29 C.F.R. § 516, *et seq.* and an order directing Defendants to pay Mr. Mert an amount to be determined at trial;

(f)    On the sixth cause of action, a declaration that Defendants are in breach of  N.Y. Lab. Law S 195, and an order directing Defendants to pay Mr. Mert an amount to be determined at trial;

(g)    On the seventh cause of action, a declaration that Defendants are in breach 29 U.S.C. § 207 and an order directing Defendants to pay Mr. Mert an amount to be determined at trial;

(h)    On the eighth cause of action, a declaration that Defendants are in breach of N.Y. Comp. Codes R. & Regs., Title 12, § 142-2.2  and an order directing Defendants to pay Plaintiff an amount to be determined at trial, but in no event less than one hundred percent (100%) of the value of his wages shown to be unpaid, prejudgment interest, and attorneys' fees and costs;

(i)    On the ninth cause of action, a declaration that Defendants are in breach of N.Y. Comp. Codes R. & Regs., Title 12, § 146-1.6 and an order directing Defendants to pay Plaintiff an amount to be determined at trail, but in no event less than one hundred percent (100%) of the value of his wages shown to be unpaid and prejudgment interest;

21

(j)      On the tenth cause of action, a declaration that Defendants are in breach of N.Y. Lab. Law § 193 and an order directing Defendants to pay Plaintiff an amount to be determined at trial, but in no event less than one hundred percent (100%) of the value of his wages shown to be unpaid, prejudgment interest, attorneys' fees, and costs, and liquidated damages pursuant to N.Y. Lab. Law § 198;

(k)      On the eleventh cause of action, a declaration that Defendants are liable for common law assault against Mr. Mert and an order directing Defendants to pay Mr. Mert an amount to be determined at trial;

(l)      On the twelfth cause of action, a declaration that Defendants are liable for common law battery against Mr. Mert and an order directing Defendants to pay Mr. Mert an amount to be determined at trial;

(m)      On the thirteenth cause of action, a declaration that Defendants are liable for intentional infliction of emotional distress against Mr. Mert and an order directing Defendants to pay Mr. Mert an amount to be determined at trial;

(n)      On the fourteenth cause of action, a declaration that Defendants are liable for retaliatory termination of Mr. Mert's employment in violation of 29 U.S.C. § 215(a)(3) and an order directing Defendants to pay Mr. Mert an amount to be determined at trial;

(o)      On the fifteenth cause of action, a declaration that Defendants are liable for retaliatory termination of Mr. Mert's employment in violation of N.Y. Lab. Law §§ 215 and 740 and an order directing Defendants to pay Mr. Mert an amount to be determined at trial, including but not limited to his attorneys' fees and costs; and

(p)      All such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues triable by a jury.

Dated:  New York, New York
        April 21, 2025

                                        PRYOR CASHMAN LLP

                                        By: _____
                                               Joshua Zuckerberg
                                               Jacob B. Orgel
                                        7 Times Square
                                        New York, New York 10036
                                        (212) 421-4100

                                        *Attorneys for Plaintiff Savas Mert*